IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01670-DDD-TPO

KRYSTAL MARTINEZ,
as next friend of minor, D.M.,

    Plaintiff,

v.

OMNI HOTELS MANAGEMENT CORP.,

    Defendant.

## ORDER

**Timothy P. O'Hara, United States Magistrate Judge**

Before the Court is the Parties' discovery dispute regarding the disclosure of Defendant's medical review report. The Plaintiff seeks its disclosure under Federal Rule of Civil Procedure 26 generally and the Defendant objects to its disclosure under both Fed. R. Civ. P. 26(b)(3)(A) (Work Product Doctrine) and (b)(4)(D) (Non-testifying Experts). After considering the Parties' briefing, the relevant law, the Parties' arguments, the Court **denies Plaintiff's request to compel disclosure of the medical review report.**

## BACKGROUND

On July 17, 2022, D.M., a minor child, and his parents attended a conference in Broomfield, Colorado, for children with Epidermolysis Bullosa ("EB").[1] ECF 4 ¶¶ 7-8. While attending the conference, the family stayed at the Omni Interlochen Hotel and Resort in

---

[1] EB is a "rare and incurable condition that causes fragile blistering skin, leading to severe pain, disfigurement, and internal and external wounds." ECF 4 ¶ 9.

Broomfield, Colorado. *Id.* ¶ 7. During his four-day stay, D.M. "ate all of his meals at Omni." *Id.* ¶ 13. D.M.'s mother observed "on multiple occasions, undercooked meat being offered to conference-goers, including D.M." *Id.* ¶ 30.

On July 20, 2022, D.M. began feeling stomach pain and experiencing diarrhea. *Id.* ¶ 14. His condition worsened over the next two days, and on July 22, 2022, he was taken to the Children's Hospital in Aurora, Colorado. *Id.* ¶ 22. At the hospital, D.M. tested positive for Salmonella and was admitted for treatment and observation. *Id.* ¶¶ 25-26. D.M. spent four days in the hospital. *Id.* ¶ 27.

Plaintiff brings three claims against the Defendant. Plaintiff's first claim, under a strict products liability theory, alleges that Defendant was a "product manufacturer and seller" as contemplated by the Colorado Product Liability Act, Colo. Rev. Stat. §13-21-401 *et seq*. By serving Plaintiff food contaminated with *Clostridium difficile*, Defendant is strictly liable for the harm proximately caused by its sale of "defective food products." *Id.* ¶¶ 54, 57. Plaintiff's second claim, one of negligence, alleges that Defendant had a duty to protect Plaintiff against contamination of food served at the hotel and to "maintain its premises in a safe and sanitary condition so that food cooked and served at the hotel would not be contaminated with potentially deadly bacterium like *Colstridium difficile*." *Id.* ¶¶ 59-60. The final claim, alleging negligence *per se*, states that Defendant failed to comply with "applicable federal, state, and local laws, ordinances, and regulations pertaining or applying to the storing, preparing, cooking, and serving of food products at the hotel." *Id.* ¶ 68.

## **RELEVANT CASE HISTORY**

Prior to March 10, 2023, Plaintiff had retained counsel in connection with the present case. On March 10, 2023, Plaintiff's counsel contacted Defendant's insurance representative[2] to confirm that his office represented Plaintiff, on behalf of D.M. ECF 35-1 at p. 9. On March 13, 2023, Plaintiff's counsel transmitted a "bodily injury demand" to Defendant's insurance representative. *Id*. When that representative indicated that the attachment could not be opened, Plaintiff's counsel re-sent the "demand packet." *Id.* at p. 7.

On April 6, 2023, Plaintiff's counsel followed up with Defendant's insurance representative about the status of the Defendant's review. *Id*. at p. 5. On May 5, 2023, Defendant's representative sent case materials, including D.M.'s medical records, to an expert witness for a medical review. Defendant posed certain questions to the expert relating to the reasonableness of the treatment of D.M. and the causal connection between the injury and medical treatment.[3]

On May 16, 2023, in response to a follow-up from Plaintiff's counsel, Defendant's insurance representative responded that they "are still awaiting the medical records review that is being done. Once completed we will then be able to further evaluate." *Id.* at p. 4. On May 16, 2023, Plaintiff's counsel responded by saying "[i]t's good timing as my Client has asked me to draft a complaint which I was actually in the process of doing right now." *Id*. at p. 3. On May 18, 2023, the expert witness completed his review and disclosed a report to Defendant's insurance representative.

---

[2] The claim was being handled by Broadspire.
[3] In order to rule on the Parties' dispute, it is necessary to identify, generally, the purpose of the consultation to determine whether it is practicable for Plaintiff to obtain a similar opinion by other means.

3

Ten days later, on May 28, 2023, Plaintiff filed the present lawsuit, originally in Broomfield County District Court. ECF 4. The matter was later removed to the District of Colorado. ECF 1.

On April 1, 2025, the Parties appeared before this Court for a Discovery Hearing. ECF 31. The Hearing focused on the discoverability of a medical review report created by Defendant's retained expert. Defendant does not intend to call the expert as a witness at trial. ECF 34 at p. 5 ("Defendant has no intention of calling the Report's author as a witness at trial.") During the Hearing, defense counsel presented the Court with the document in question, and the Court took a brief recess to conduct an *in camera* review. ECF 31. After hearing from the Parties, the Court determined that additional briefing was necessary. The Court ordered the Defendant to file a brief "justifying the non-discoverability of the document at issue." *Id.* The Plaintiff was ordered to respond. *Id.*

Since the Hearing, Defendant agreed to disclose a portion of the report to Plaintiff. *See* ECF 34 at p. 2 (noting that six pages were disclosed to Plaintiff's counsel on April 8, 2025). The newly disclosed documents include a referral form completed by Ms. Sandra Schneider, Senior Claim Examiner, requesting an expert review of D.M.'s medical records. The portion of the document that remains in dispute are the eight pages represented by Bates stamped pages TRT Martinez_915 and TRT Martinez_922-927. *Id.* These pages include the expert witness' opinions regarding treatment received by D.M.

## LEGAL STANDARDS

*Scope of Discovery*

Federal Rule of Civil Procedure 26(b)(1) states that parties in civil litigation may request information

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweigh its likely benefit.

The scope of discoverable information is wider than that of relevant information. *Id.* ("Information within the scope of discovery need not be admissible in evidence to be discoverable."). "The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P. 26(b)(1)." *Brand Mgmt, Inc. v. Maryland Cas. Co.*, No. 05-cv-02293-PSF-MEH, 2006 WL 8454338, at *2 (D. Colo. June 15, 2006) (citation omitted).

*Non-Testifying Retained Expert Report - Fed. R. Civ. P. 26(b)(4)(D)*

Federal Rule of Civil Procedure 26(b)(4)(D) allows a party to shield disclosure of "facts known or opinions held by an expert" when that expert was retained "in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." There are two exceptions to this protection: 1) as allowed in Federal Rule of Civil Procedure 35(b) and 2) "on showing of exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.* The party seeking to invoke the protection of the rule bears the initial burden. *Arkansas River Power Authority v. The Babcock & Wilcox Comp.*, 310 F.R.D. 492, 495 (D. Colo. Oct. 1, 2015) (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)). If the party seeking protection demonstrates that the information is protected by Rule 26(b)(4), then the burden shifts to the party seeking to receive the information to demonstrate

5

that one of the exceptions applies. *Id.* (citing *Martensen v. Koch*, 301 F.R.D. 562, 580 (D. Colo. 2014)). The party seeking the discovery "cannot rely on conclusory statements or leave it to the court to ascertain its substantial need." *Id.*

There are a number of policy considerations that support the protection of this kind of information when it is obtained by a party in anticipation of litigation. First, if the identity of the expert is known, the party seeking the discovery can contact the expert and subpoena any records that were made, including the very reports created by the experts. *See Ager v. Jane C. Stormont Hospital & Training School for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980).[4] Second, the seeking party could subpoena the expert as a witness at trial and question the witness about the evaluation that occurred. *Id.* And even worse, the seeking party could "call his opponent to the stand and ask if certain experts were retained in anticipation of trial, but not called as a witness, thereby leaving the jury with an inference that the retaining party is attempting to suppress adverse facts or opinions." *Id.* Finally, allowing this type of disclosure could have a chilling effect among individuals who agree to provide expert opinions for litigants on the condition that the opinions remain confidential. *Id.*

---

[4] In *Ager*, defendant sought information from plaintiff about an expert who plaintiff indicated would not testify at trial. 622 F.2d at 498. A U.S. Magistrate Judge ordered the information to be disclosed, the plaintiff appealed, and the District Judge affirmed the Magistrate Judge's ruling. *Id.* at 499. Plaintiff's counsel refused to comply with the Court's Order, however, and he was held in contempt and even taken into custody. *Id.* The Tenth Circuit reversed the ruling of the District Court, vacating the civil contempt order, with instructions for the District Court to determine whether the expert was "informally consulted in anticipation of litigation but not retained or specially employed" or "retained or specially employed in anticipation of litigation." *Id.* at 503-504. In the latter case, the Tenth Circuit required further analysis regarding the existence of exceptional circumstances that would justify disclosure of the expert's identity, opinions or other collateral information. *Id.* at 504.

*Work Product Doctrine – Fed. R. Civ. P. 26(b)(3)(A)*

The work product doctrine exempts from discovery 'documents and tangible things . . . prepared in anticipation of litigation or for trial.'" *Martensen*, 301 F.R.D. at 572-73 (quoting Fed. R. Civ. P. 26(b)(3)(A)). "A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, [sic] and was intended to remain confidential." *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998)). The work product doctrine includes documents created by the client or representatives of the client. *Martensen*, 301 F.R.D. at 573 (citing *In re Grand Jury Subpoenas*, 561 F. 3d 408, 411 (5th Cir. 2009)). However, "work product may be discovered if it is otherwise discoverable under Rule 26(b)(1) and the party seeking the disclosure establishes a 'substantial need.'" *Kurlander v. Kroenke Arena Co., LLC*, No. 16-cv-02754-WYD-NYW, 2017 WL 3084473, at *2 (D. Colo. Jul. 20, 2017) (citing Fed. R. Civ. P. 26(b)(3)(A)(i), (ii)). A party may show a "substantial need" by demonstrating a need for the materials and the inability to obtain their "substantial equivalent" by other means without incurring undue hardship. Fed. R. Civ. P. 26(b)(3)(ii).

## ANALYSIS

*Parties' Filings*

First, Defendant argues that the report constitutes work product because it was "plainly made in anticipation of litigation." ECF 34 at p. 3. Plaintiff made a pre-suit demand and "threatened litigation" on March 10, 2023, and, as a result, the subsequently created report should be protected. *Id.* at pp. 3-4.

Second, the report is protected as a record generated by a non-testifying expert pursuant to Federal Rule of Civil Procedure 26(b)(4)(D). According to Defendant, by the plan language of the rule, the report need not be disclosed. *Id*. at p. 4. Also, the *Ager* factors do not support requiring

7

disclosure. And since neither of the two exceptions apply, Plaintiff has failed to meet her burden. *Id.* at pp. 4-5 (citing *Arkansas River Power Authority*, 310 F.R.D. at 495 (once the requesting party has demonstrated that the information is protected, the burden falls on the opposing party to demonstrate exceptional circumstances compelling disclosure)). Defendant concedes that the burden of both exclusions rests with the Defendant. *Id.* at p. 3 (citing *Carlson v. Colo. Cent. for Reprod. Med., LLC*, 341 F.R.D. 266, 286 (D. Colo. 2022)).

Plaintiff responds that the work product doctrine is inapplicable here. ECF 35 at p. 2. Specifically, because there was no "substantial probability of imminent litigation over the claim," Defendant cannot claim protection from disclosure. *Id*. (citing *Colo. Mills Ltd. Liab. Co. v. Phila. Indem. Ins. Co*., No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *6 (D. Colo. Apr. 2, 2013)). Plaintiff argues that the "reasonably foreseeable" standard referenced by Defendant is inapplicable. *Id.* In addition, Plaintiff contends that the "*Ager* factors conclusively demonstrate that Defendant cannot meet its burden." *Id.* at p. 5.

### *Non-Testifying Retained Expert*

This Court finds that Defendant has demonstrated that the expert witness was retained in anticipation of litigation as required by Fed. R. Civ. P. 26(b)(4). The plain language of the rule, specifically the phrase "in anticipation of," suggests that it is meant to cover pre-litigation expert referrals in cases that never become lawsuits. Litigation need not be definite to qualify.

The order of events confirms the Court's conclusion. At some point prior to March 10, 2023, Plaintiff retained counsel and notice of such was sent to Defendant. *See* ECF 35-1 (3/10/23 email referencing that "previous correspondence can confirm this office represents Krystal Martinez on behalf of [D.M.] in regard to the above subject claim."). On March 13, 2023, Plaintiff's counsel issued a settlement demand packet to Ms. Sandra Schneider, Senior Claim

8

Examiner. On May 5, 2023, Ms. Schneider then referred the matter for expert review, attaching D.M.'s medical records. The expert created a report 13 days later, on May 18, 2023. While the expert was reviewing the matter, Plaintiff's counsel confirmed the posture of the case by responding to Defendant discussing how the Plaintiff "has asked me to draft a complaint which I was actually in the process of doing right now." ECF 35-1 at p. 3. Based on this chronology alone, the expert's report was created "in anticipation of litigation" as contemplated by Fed. R. Civ. P. 26(b)(4).

The *Ager* factors also support the Court's conclusion that the consultation was made "in anticipation of litigation" and was not just an informal consultation. First, the consultation between Defendant and the retained expert occurred within two months of Plaintiff's counsel's settlement demand, demonstrating that the consultation likely was the direct result of Plaintiff's counsel's demand. The consultation was initiated by the Senior Claim Examiner in charge of the claim, which required her to complete a formal referral form that outlined the "Referral Questions and Conclusions." *See* TRT Martinez_00915. This factor clearly weighs in favor of protecting the report.

Second, although somewhat limited in scope, the referral purpose was clear: to determine the reasonableness of the medical treatment provided and the causation of the injury suffered by Plaintiff, which are concepts that are essential in assessing damages in a case of this type. The Senior Claim Examiner provided 150 pages of D.M.'s medical records as part of the referral, which supports the idea that Defendant was preparing for litigation rather than seeking casual advice.

Third, although the duration of the expert relationship was short, i.e., less than two weeks, the relationship concluded with the expert's issuance of a formal opinion. The "intensity" of the relationship was high: this was not a situation where Defendant just asked for the expert to present

9

informal thoughts about potential damages. Defendant wanted opinions in writing that would shape the Party's litigation strategy during negotiations and beyond. The expert witness's opinion also contained a disclaimer that is consistent with those that preface formal opinions.

Fourth, the terms of the relationship also support protection of the report. Defendant sought the expert's opinions on discrete topics, clearly identified in the referral form. This was not a vague contact requesting general opinions. The Court infers, based on the formality of the referral form and the report received, that the expert witness was retained, but it is not clear how much was paid to the expert.

Finally, the public policy concerns expressed in *Ager* weigh in favor of prohibiting disclosure here. The rule is meant to "prevent an advisor from becoming an involuntary witness." *Delcastor, Inc. v. Vail Associates, Inc.*, 108 F.R.D. 405, 408 (D. Colo. 1985).

Plaintiff first argued at the Discovery Hearing that the Colorado Supreme Court case of *Hawkins v. Dist. Court of Fourth Judicial District*, 638 P.2d 1372 (Colo. 1982) supported the disclosure of the report. However, that case involved an insured's breach of contract and bad faith claims, a unique situation to the strict products liability and third-party negligence claims that are present here.

Then, in the Response to Defendant's Supplemental Briefing, Plaintiff first argues that Defendant fails to provide sufficient evidence to meet the *Ager* factors. ECF 35 at pp. 4-5. Plaintiff then argues that since the demand came pre-suit, there was not a "substantial probability of imminent litigation." *Id.* at p. 5. As to the first point, while Defendant's briefing was not prolific, it was sufficient to meet its burden. After all, Defendant provided the Court with the document in question, a portion of which also was presented to Plaintiff's counsel as part of subsequent conferral. The document itself, when considered with the referral form, gets Defendant across the

10

finish line on this issue. On the second point, the phrase "substantial probability of imminent litigation," is a phrase from *Hawkins* and *Colorado Mills, Ltd. Liab. Co.*, both cases involving first-party bad faith and breach of contract claims. And even if imminence were required, the chronology of events proves Plaintiff wrong. Within ten days of the expert's completion of the medical record report, Plaintiff filed suit in Broomfield County. Litigation was clearly imminent when the referral was sent.

Finally, Plaintiff makes little attempt to demonstrate that exceptional circumstances exist to justify compelling disclosure. Plaintiff states that she has "no way of obtaining the report by any other means as the report's author has not been identified – preventing subpoena of the report – and Defendant and its insurer otherwise have sole custody and control over the document." However, the exception requires that Plaintiff demonstrate it is "impracticable for the party to obtain facts or opinions *on the same subject* by other means." Fed. R. Civ. P. 26(b)(4)(D) (emphasis added). Based on what Defendant has recently shared, Plaintiff knows what information was submitted to the expert and what questions were asked of the expert. Plaintiff may retain an expert to do an identical review and to determine the answers to the questions posed by Defendant in the referral.

As a result, the Court finds that the Defendant's medical record review report is covered by Fed. R. Civ. P. 26(b)(4)(D) and is not subject to disclosure. Plaintiff also fails to provide exceptional circumstances under Fed. R. Civ. P. 26(b)(4)(D)(ii). Therefore, Plaintiff's request to compel the document is **denied**.

### *Work Product*

Based on the Court's ruling above, it need not determine whether the document is covered by the Work Product Doctrine as described in Fed. R. Civ. P. 26(b)(3)(A). However, out of an

abundance of caution, the Court nonetheless determines that the document is also part of the Defendant's work product and not subject to disclosure on this ground as well.

Fed. R. Civ. P. 26(b)(3)(A) broadly protects information from disclosure when it is prepared "in anticipation of litigation or for trial by or for a party or its representative." The protection includes the information produced by a party's representative or insurer. *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 617 (D. Kan. 2014). As noted above, the chronology of events and the formal, specific nature of the referral support a conclusion that the medical record review report was requested in anticipation of litigation and not as the result of an informal request for an advisory opinion.

Plaintiff once again relies on *Hawkins* and *Colo. Mills, Ltd. Liab. Co.*, cases that are easily distinguishable due to the different claims involved. Additionally, Plaintiff argues that the email communications between Plaintiff's counsel and the Senior Claim Examiner support that the threat of litigation was not imminent, based on the conditional nature of the Plaintiff's demand. ECF 35 at p. 3. However, the Court nonetheless finds that Plaintiff's counsel's involvement in the case and subsequent settlement demand made the Defendant's request for an expert review in anticipation of litigation. As a result, the Court finds that the report is also work product of the Defendant.

Finally, similar to the "exceptional circumstances" analysis conducted above, the Court finds that the Plaintiff has failed to demonstrate that the Plaintiff has a "substantial need" for the information as contemplated by Fed. R. Civ. P. 26(b)(3)(ii). The Plaintiff is free to send the same medical records to an expert to receive a "substantial equivalent" to the Defendant's medical record review.

## CONCLUSION

In conclusion, the Court finds that Defendant's medical record report is covered by both Fed. R. Civ. P. 26(b)(3)(A) and (b)(4)(D), thus putting it outside the scope of permissible discovery. Plaintiff has failed to demonstrate either "exceptional circumstances" under Rule 26(b)(4)(D)(ii) or a "substantial need" under Rule 26(b)(3)(A)(ii) that would otherwise justify disclosure. As a result, Plaintiff's request to compel the report is **denied**.

SO ORDERED.

DATED at Denver, Colorado, this 13th day of June, 2025.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge